## UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

COBRA ACQUISITIONS LLC AND      §
ARTY STRAEHLA,      §
     §
         Plaintiffs,      §
     §
     §     Case No. CIV-21-697-D
       v.      §
     §
AL GLOBAL SERVICES, LLC,      §
     §
         Defendant.      §

## ORDER CONFIRMING ARBITRATION AWARD,
## AND JUDGMENT

Before the Court is the Application to Confirm Arbitration Award and Brief in Support Thereof [Doc. No. 1] filed by Plaintiffs Cobra Acquisitions LLC and Arty Straehla (collectively "Plaintiffs"). The Court, having considered the submissions of the parties and applicable legal authority, hereby grants the Application and finds and orders as follows:

1.       Plaintiffs filed a Demand for Arbitration with the American Arbitration Association ("AAA") on April 12, 2019 (as amended on May 15, 2019 and August 17, 2020) alleging that Defendant AL Global Services, LLC ("Alpha Lobo") breached a Master Services Agreement (the "MSA") and seeking two declaratory judgments and Plaintiffs' reasonable costs and attorneys' fees. Specifically, Plaintiffs sought declarations that (1) Cobra Acquisitions LLC ("Cobra") was under no obligation to renew the MSA or to enter into a new contract with Alpha Lobo following expiration of the MSA, and that Cobra was not precluded from entering into a new contract with a third party at that time; and (2) no valid oral contract existed between Cobra and Alpha Lobo.

2.     On June 25, 2021, after a three-day evidentiary hearing, a three-member panel of AAA arbitrators issued the Final Award attached hereto as Exhibit 1 (the "**Award**"), finding, in part, as follows:

> Declaration One: The Panel finds that the Master Service Agreement and its First Amendment between Cobra and Alpha Lobo terminated by its express terms on August 15, 2018.  Under the MSA and its amendment, Cobra had no contractual obligation to enter a new contract with Alpha Lobo but was free to contract with any entity of its choosing . . . .

> Declaration Two: The Panel finds that under the terms of the MSA, no valid oral agreement exists between Cobra and Alpha Lobo.

> The Panel awards Cobra its reasonable and necessary attorney fees in the amount of $405,345.00.  Accordingly, the Panel ORDERS Alpha Lobo to pay to Cobra, for the use and benefit of their attorneys and in reimbursement of attorney's fees and costs necessarily incurred herein, the sum of $405,345.00.

> The Panel further awards Cobra $50,000.00 in conditional appellate attorney fees in the event Alpha Lobo pursues an unsuccessful appeal of the Panel's decision to an intermediate court of appeals.  The Panel further awards Cobra $25,000.00 in the event Alpha Lobo pursues an unsuccessful appeal from a decision of the intermediate court of appeals to a higher court. . . .

> The administrative fees of the American Arbitration Association . . . shall be fully borne [by] Alpha Lobo.  Therefore, in addition to the other sums awarded above, Alpha Lobo shall reimburse Cobra the sum of $49,040.00 . . . .

[Doc. No. 1-1 at pp. 17-18].

3.     This Court has jurisdiction over this matter, personal jurisdiction over Alpha Lobo, and the United States District Court for the Western District of Oklahoma is the proper venue for this action.

4.     The Federal Arbitration Act, 9 U.S.C. § 9, requires a court to confirm an arbitration award absent proper grounds for the modification, correction, or vacation of the arbitration award.

5.     There are no grounds or basis for modifying, correcting, or vacating the Award and, therefore, the Application is hereby granted, and this Judgment is properly entered.

     6.     Counsel for Plaintiffs have conferred with counsel for Alpha Lobo who agrees to the form of this order.

**IT IS THEREFORE ORDERED** that the Application is hereby granted and the Award, which is incorporated herein by reference, is hereby confirmed in its entirety.

**IT IS FURTHER ORDERED** that the declaratory judgments and judgment on the other relief stated in the Award and in paragraph 2 above are hereby entered in favor of Plaintiffs Cobra Acquisitions LLC and Arty Straehla and against Defendant Al Global Services, LLC for the sum of $454,385.00, plus post judgment interest pursuant to 28 U.S.C. § 1961.

**IT IS SO ORDERED** this 31st day of August, 2021.

_____
TIMOTHY D. DeGIUSTI
Chief United States District Judge

Agreed as to form this 18th day of August, 2021:

| AKIN GUMP STRAUSS HAUER & FELD LLP | CHASNOFF MUNGIA VALKENAAR PEPPING & STRIBLING, LLP |
|---|---|
| /s/M. Scott Barnard<br>M. Scott Barnard, Texas #24001690<br>Heather L. Peckham, Texas Bar #24028995<br>Amanda Praestholm, Texas Bar #24105952<br>AKIN GUMP STRAUSS HAUER & FELD LLP<br>2300 N. Field Street, Suite 1800<br>Dallas, Texas 75201<br>Email: sbarnard@akingump.com<br>Email: hpeckham@akingump.com<br>Email: apraestholm@akingump.com<br><br>HALL, ESTILL, HARDWICK,<br>GABLE, GOLDEN & NELSON, P.C.<br>Mark Petrich, Oklahoma State Bar # 11956<br>320 South Boston Avenue, Suite 200<br>Tulsa, Oklahoma 74103<br>Email: mpetrich@hallestill.com<br><br>ATTORNEYS FOR PLAINTIFFS COBRA ACQUISITIONS LLC AND ARTY STRAEHLA | /s/ Hayley N. Stephens<br>Blake W. Stribling, Pro Hac Vice Pending<br>1020 N.E. Loop 410, Suite 150<br>San Antonio, TX 78209<br>Email: bstribling@chasnoffstribling.com<br><br>Hayley N. Stephens<br>Conner & Winters, LLP<br>4100 First Place Tower<br>15 E. 5th Street<br>Tulsa, OK 74103<br>Email: hstephens@cwlaw.com<br><br>ATTORNEYS FOR DEFENDANT AL GLOBAL SERVICES, LLC |

## AMERICAN ARBITRATION ASSOCIATION

| | | |
|---|---|---|
| COBRA ACQUISITIONS LLC, | § | |
| AND ARTY STRAEHLA | § | |
| | § | |
| CLAIMANTS | § | |
| | § | |
| v. | § | Case No. 01-19-0001-1475 |
| | § | Panel: Hon. Phylis J. Speedlin |
| | § | Jeff Abrams |
| | § | Hon. John J. Specia |
| AL GLOBAL SERVICES, LLC, | § | |
| | § | |
| RESPONDENT | § | |

## FINAL AWARD

We, HON. PHYLIS J. SPEEDLIN, HON. JOHN SPECIA, AND JEFF ABRAMS, having been designated in accordance with the Arbitration Agreement between the parties,[1] and having been duly sworn, and having duly heard the proofs and allegations of the parties,[2] hereby AWARD as follows:

Cobra Acquisitions LLC and Arty Straehla (collectively "Cobra") bring this arbitration against AL Global Services, LLC ("Alpha Lobo"), seeking declaratory relief on two contract issues and damages for an alleged breach of the parties' Arbitration Agreement. Cobra is a wholly owned subsidiary of Oklahoma-based Mammoth Energy Services, Inc. ("Mammoth"). Straehla is the CEO of both Mammoth and Cobra. Cobra provides utility infrastructure services, including utility infrastructure repairs after natural

---

[1] *See* JX 1 Master Services Agreement dated October 20, 2017, at Article 13.

[2] A three-day evidentiary hearing was held on May 10-12, 2021, by Zoom, with attorneys Scott Barnard, Heather Peckham, and Amanda Praestholm, counsel for Claimants, Cobra Acquisitions LLC and Arty Straehla (collectively "Cobra"), and attorneys Blake Stribling, Barry Chasnoff, and Adam Kiehne, counsel for Respondent, AL Global Services, LLC ("Alpha Lobo"). At the conclusion of the hearing, each party acknowledged and confirmed that each had a full opportunity to present their respective cases and did not have any other evidence to present. The Panel accepted post-hearing briefing, which was received on May 27, 2021, at which time the Panel declared the hearing closed.



EXHIBIT
1

disasters.  Alpha Lobo is a Texas limited liability company owned and managed by three

members—Jim Jorrie, Craig Charles, and Julian ("Jace") Calderas, Jr.

**Factual and Procedural Background**

      Certain facts in this arbitration are not disputed:

1.    Hurricane Maria struck Puerto Rico in late September 2017, causing, among other things, widespread power outage to the island.

2.    Cobra entered into an Emergency Master Services Agreement on October 19, 2017, with Puerto Rico Electric Power Authority ("PREPA"), Puerto Rico's sole provider of electricity, under which Cobra was to perform hurricane restoration and reconstruction services on Puerto Rico's electrical grid ("First PREPA Agreement").[3]

3.    The following day, Cobra entered into a Master Services Agreement ("MSA") with Alpha Lobo to provide the security services, aviation, and logistics support that would be required while Cobra performed under the First PREPA Agreement.

4.    Alpha Lobo, in turn, subcontracted with Espada Logistics & Security Group, LLC ("Espada Logistics"), to provide the security services, aviation, and logistics for Cobra.

5.    Espada Logistics is a Texas limited liability company owned and managed by Jim Jorrie, one of the three members of Alpha Lobo.

6.    Cobra filed a Demand for Arbitration with the American Arbitration Association on April 12, 2019.  Alpha Lobo moved to stay the arbitration on April 30, 2019.  The trial court granted the stay.  Cobra appealed, and the Fourth Court of Appeals reversed the trial court's order on April 22, 2020.  This arbitration followed.

---

[3] *See* JX 3.

In this arbitration, Cobra seeks two declaratory judgments surrounding the conclusion of its MSA contract with Alpha Lobo. Cobra requests a declaration that Cobra was not required to enter into a new contract with Alpha Lobo and was not precluded from entering a contract with another entity, Espada Caribbean LLC.[4] Cobra further requests a declaration that no valid oral agreement existed between Cobra and Alpha Lobo. Finally, Cobra seeks a finding that Alpha Lobo breached the parties' mandatory arbitration provision by moving to stay this arbitration.

Prior to the final evidentiary hearing, Alpha Lobo filed a dispositive motion as to all Cobra's claims,[5] which the Panel denied because of numerous fact issues.[6] Alpha Lobo restates many of its previous arguments. Specifically, Alpha Lobo insists that Cobra's declaratory judgment actions are barred as an improper use of the Federal Declaratory Judgment Act, and Cobra's contract claim fails as a matter of law. Alpha Lobo further challenges our authority to hear Cobra's contract claim arguing that the issue of arbitrability has not been determined by a court yet. The Panel will begin its analysis with the Fourth Court of Appeals' Decision.

**Appellate Decision Denying Motion to Stay Arbitration**

As mentioned earlier, Alpha Lobo filed a Motion to Stay Arbitration in Bexar County District Court soon after Cobra filed its initial Demand for Arbitration. The trial court granted the stay. Cobra successfully challenged the trial court before the Fourth Court of Appeals.[7] The controlling question before the appellate court was the scope of the Arbitration Agreement. The Fourth Court specifically examined whether the parties'

---

[4] Espada Caribbean, LLC was formed in Puerto Rico and is owned and managed by Jim Jorrie.
[5] *See* JX 63.
[6] *See* JX 64.
[7] *See* JX 59.

3

Arbitration Agreement applied to Cobra's two declaratory judgment claims.  *Cobra Acquisitions LLC v. AL Global Servs., LLC*, WL 1931599, *7 2020.  "Whether the claims in dispute fall within the scope of a valid arbitration agreement is a question of law that we review de novo."  *Id.* at *8.  In deciding that issue, the Fourth Court of Appeals first examined paragraphs 13.1 and 13.2 of the MSA to determine the parties' intent.  *Id.* at *9. The Court read both provisions together and concluded that based on the plain language of the MSA the parties intended "to amicably settle a broad range of disputes with regard to the interpretation of this agreement or relative to the performance of any of the contractual obligations."  *Id.* at *11.  The Court held that both of Cobra's declaratory claims were within the scope of the parties' Arbitration Agreement.  *Id.* at *12.  As to Cobra's first declaration, the Court reasoned that "the MSA and its amendment contained express provisions governing the termination of the MSA, extensions of the MSA, and the end date of the MSA."  *Id.*  Turning to Cobra's second declaratory request as to no oral agreement, the Court reasoned that these claims "necessarily depend on the interpretation of the MSA and the parties' rights and obligation under the MSA."  *Id.* at *13.  Based on its holding, the Fourth Court reversed the trial court and ordered the parties to arbitration.  *Id.* at *18. Thus, both Cobra's declaratory requests are properly before this Panel.

Alpha Lobo correctly notes that the Fourth Court has not reviewed Cobra's current contract claims since they were not originally pled by Cobra.  Because the Fourth Court did not specifically address Cobra's contract claim, Alpha Lobo contests the Panel's authority to hear Cobra's contract claim arguing that only the court, not the Panel, can determine arbitrability.  The Panel disagrees.  This Panel is bound by the "law of the case." *See Briscoe v. Goodmark Corp.*, 102 S.W.3d 714, 716 (Tex. 2003).  The "law of the case"

doctrine is defined as that principle under which decisions made on questions of law govern the case through subsequent stages. *Id.* The Fourth Court of Appeals' opinion defines the scope of the parties' MSA Arbitration Agreement. The Fourth Court held that the Arbitration Agreement governs issues involving "the interpretation of this agreement" or "the performance of any of the contractual obligations." *Cobra,* WL 1931599, *11. The Panel finds that Cobra's contract claim falls within the interpretation and performance of the MSA. Cobra's claim that Alpha Lobo breached Article 13 of the MSA necessarily requires the Panel to examine the express terms of Article 13, and to determine whether Alpha Lobo breached its contractual obligations. Accordingly, the Panel overrules Alpha Lobo's objection to the Panel addressing the contract issues in this arbitration.

The Panel will next address the merits of Cobra's breach of contract claim.

**Cobra's Breach of Contract**

Cobra claims Alpha Lobo breached the MSA's arbitration provision by filing a motion to stay this arbitration. Alpha Lobo defends that it did not violate the terms of the MSA because the MSA does not delegate the issue of arbitrability to the Panel. Alpha Lobo notes that whether a particular claim is subject to arbitration is reserved as a gateway issue for determination by the courts and not arbitrators. *Cobra,* WL 1931599, *7 (citing *In re Weekley Homes, L.P.,* 180 S.W.3d 127, 130 (Tex. 2005) (orig. proceeding). Alpha Lobo argues that since it was proper to seek court determination as to the scope of the Arbitration Agreement, Cobra cannot establish that Alpha Lobo breached the parties' Arbitration Agreement. The Panel agrees. One of the four essential elements of a breach of contract claim is establishing that the party breached the contract. *See Sci. Spectrum, Inc. v. Martinez,* 941 S.W.2d 910, 911 (Tex. 1997) (stating that if the defendant

conclusively negates at least one essential element of the plaintiff's cause of action, he is entitled to summary judgment as a matter of law).   Here, Cobra has conclusively established that its Motion to Stay Arbitration properly asked the District Court to determine the gateway issue of arbitrability. *Cobra,* WL 1931599, *7.  The Panel denies Cobra's contract claim.

**Declaratory Judgment Act**

As an initial matter, the parties disagree whether the Federal or Texas Declaratory Judgment Act applies to this arbitration. *See* 28 U.S.C. §2201(a); Tex. Civ. Prac. & Rem. Code §37.002.  Alpha Lobo argues that the declaratory relief Cobra seeks fails to meet the threshold requirement of the Federal Declaratory Judgment Act because no actual controversy exists and because Cobra seeks declarations of non-liability.   In response, Cobra argues that the Panel's jurisdiction is derived from the parties' MSA. *See BNSF Ry. Co. v. Alstom Transp., Inc.,* 777 F.3d 785, 788 (5th Cir. 2015) ("Arbitration is a matter of contract.  Thus, the power and authority of arbitrators in an arbitration proceeding is dependent on the provisions under which the arbitrators were appointed.")   Here, the parties' Arbitration Agreement provides only that the "validity and construction of this Agreement shall be governed by the Laws of the United States of America."[8]   The Scheduling Order states that "the 'Laws of the United States of America' apply to this arbitration, and to the extent there is no federal law on a given point, the substantive law of the State of Texas applies."[9]  Therefore, because there is not federal law of contract,  and because all Cobra's claims are contractual, the Panel shall apply Texas law to the declaratory judgment questions before us. *Avent v. Progressive Cas. Ins. Co.,* 2021 WL

---

[8] *See* JX 1 § 13.3.
[9] *See* Scheduling Order paragraph 17.

168500 at *4 n.2 (S.D.N.Y. Jan. 19, 2021) (citing *Erie R.R. v. Tompkins*, 304 U.S. 64, 78, 58 S. Ct. 817, 82 L. Ed. 1188 (1938)).   Moreover, Cobra's declaratory judgment claims properly seek declaratory relief under either the Federal or the Texas Declaratory Judgment statutes.

Declaratory relief is ripe for adjudication only where an "actual controversy" exists. *See* 28 U.S.C. §2201(a) ("In a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the right and other legal relations of any interested party seeking such declaration."); *Empire Life Ins. Co. v. Moody*, 584 S.W.2d 855, 858 (Tex.1979) ( "A judgment under the Uniform Declaratory Judgments Act depends on a finding that the issues are not hypothetical or contingent, and the questions presented must resolve an actual controversy, although such questions may in the future require adjudication."). Whether an actual controversy exists is a case-by-case determination. *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273, 61 S. Ct. 510, 512, 85 L. Ed. 826 (1941).   The relevant inquiry is whether the parties have adverse legal interests of "sufficient immediacy and reality to warrant the issuance of a declaratory judgment."   *Id.*   Certainty of litigation is not required; instead, a specific and concrete threat of litigation can be enough. *Orix Credit Alliance, Inc. v. Wolfe*, 212 F.3d 891, 897 (5th Cir. 2000).

In the instant matter, Cobra filed this arbitration after receiving a written and specific demand for settlement, with a draft lawsuit from Alpha Lobo, including a statement that if settlement was not reached, Alpha Lobo would file the draft lawsuit adding Cobra as a party to Alpha Lobo's pending state court litigation.[10]   Alpha Lobo argues that

---

[10] *See* JX 35 February 8, 2019, including Alpha Lobo's First Amended Counterclaim & Third-Party Petition.

the state court litigation is a tort action only[11] and that Alpha Lobo has never sued or claimed that Cobra breached their MSA contract or any oral contract. Thus, Alpha Lobo maintains that the arbitration should be dismissed for lack of a justiciable controversy. The Panel disagrees with Alpha Lobo's assertion that it has never claimed that Cobra breached their MSA contract or any oral contract. Alpha Lobo's draft lawsuit, correspondence, and Answering Statement in this arbitration all reference the parties' contractual relationship and an alleged oral contract. First, Alpha Lobo's draft lawsuit provides in pertinent part:

> Senior employees of Cobra stated on August 13, 2018, that Cobra planned to continue the relationship and extend, renew or add additional contracts for Alpha Lobo to continue providing services in connection with the Cobra Project (a "**Continuation Contract**"). Cobra representatives told Mr. Charles that Cobra was going to renew Alpha Lobo's contract and that Alpha Lobo would continue to be part of the team for the Cobra Project going forward. (emphasis in the original).[12]

Alpha Lobo's March 29, 2019 letter to Cobra includes this statement found in the final paragraph:

> Second, as you could see from the bid sheet I passed out, $20 million (or a very large portion of it) can be extracted from Espada Caribbean through Cobra's ongoing relationship, and Jorrie will still make more than he originally was going to make if he hadn't breached his fiduciary duty; Cobra hadn't participated; and **Cobra hadn't breached its oral contract with Jace and Alpha Lobo.**[13] (emphasis added)

Finally, Alpha Lobo pleads in its Amended Answering Statement in this very arbitration: "Claimants' claims fail, in whole or in part, due to **prior material breaches of the MSA**."[14] (emphasis added) Moreover, both principles of Alpha Lobo testified at the evidentiary hearing that they had an oral agreement with Cobra to provide security work

---

[11] *See* JX 38 March 29, 2019, letter to Cobra's attorneys.
[12] *See* JX 35 at paragraph 34; see also paragraphs 46, 79, and 82.
[13] *Id.*
[14] *See* JX 62 Amended Answering Statement at paragraph 4(d).

in Puerto Rico for so long as Cobra stayed on the island.  A claim for breach of contract generally has a four-year statute of limitations.  *See Exxon Corp. v. Emerald Oil & Gas Co.*, 348 S.W.3d 194, 203 Tex. 2011 (fraud and breach of contract have four-year statutes of limitations citing Tex. Civ. Prac. & Rem. Code §§6.004, .051).  Based on the facts and circumstances of this arbitration, the Panel finds that there is a real and substantial controversy of sufficient immediacy between Alpha Lobo and Cobra to warrant declaratory relief.  *See Maryland Casualty Co.,* 312 U.S. at 273.

Alpha Lobo next argues that Cobra's claims for declaratory relief seek declarations of non-liability for Cobra's "past conduct of awarding a contract to Espada Caribbean," or "asks the Panel to declare that Cobra's past conduct did not breach a nonexistent oral contract."[15]  As noted above, one of Alpha Lobo's defenses is this arbitration is that Cobra's claims fail, in whole or in part, due to "prior material breaches of the MSA."  Based on the Alpha Lobo's pleadings in this arbitration, and clear testimony from two of Alpha Lobo's own principles about an oral contract, the Panel finds that Cobra is properly seeking declarations of its rights and obligations under the MSA.  For all these reasons, the Panel overrules Alpha Lobo's objections.

Finally, Alpha Lobo argues that Cobra's claims should not be considered because Cobra and Straehla did not send a claim notice.  The MSA's arbitration provision requires that "[n]otice of a dispute shall be served by one party upon the other by written notice."[16]  Here, it is undisputed that Alpha Lobo itself initiated the arbitration process through a written Notice of Dispute and a Notice to Arbitrate.  The arbitration provision expressly provides notice of a dispute shall be served by "one party."  It does not state which party

---

[15] See Respondent's Post-Hearing Brief at page 12.
[16] See JX 1 at §13.1

must give notice or that both parties must give notice.  Therefore, Alpha Lobo cannot establish that the arbitration's notice requirement has not been satisfied.  The Panel overrules Alpha Lobo's objection as to lack of notice.

**Declaratory Judgment Requests**

Cobra seeks two declarations of its rights under the parties' MSA.  Cobra asks for a declaration that the MSA ended by its terms on a date certain and that no purported oral contract with Alpha Lobo imposed any obligation upon Cobra to contract with Alpha Lobo rather than Espada Caribbean for subsequent security work in connection with Cobra's PREPA contracts.  We will examine each of Cobra's declaratory requests in turn.

As to Cobra's first declaratory request, the controlling legal issue is whether the MSA terminated on August 15, 2018.  The credible evidence establishes that Cobra and Alpha Lobo amended their original MSA.[17]  The Amended MSA's Article 4, Contract Agreement Term, reads in relevant part:

1. The term hereof is estimated to be valid until **August 15, 2018**.  Further, however, this Agreement will continue in force and effect beyond this date, if the Project (as defined herein), has not yet been completed and/or all of COBRA's obligation under the COBRA/PREPA Agreement has not been fulfilled, and will continue until completion of the Project and/or fulfillment of the obligations under the COBRA/PREPA Agreement. . . .

2. COBRA and ALPHA agree that . . . all phrases in the Agreement that read as follows: "the initial estimated 120-day minimum period," or the initial estimated 120-day period," or "the initial 12-day period," are hereby amended to the following: "at least until the estimated end date of **August 15, 2018**. (emphasis added).[18]

When we construe a contract, our primary objective "is to give effect to the written expression of the parties' intent."  *Pathfinder Oil & Gas, Inc. v. Great W. Drilling, Ltd.*,

---

[17] *See* JX 2 (First Amendment to Master Services Agreement dated March 7, 2018).
[18] *Id.*

574 S.W.3d 882, 888 (Tex. 2019).  Our Texas Supreme Court regularly reaffirms the long history and strongly held public policy favoring freedom of contract in Texas.  *Energy Transfer Partners, L.P. v. Enter. Prods. Partners, L.P.*, 593 S.W.3d 732, 740 (Tex. 2020).  "[A]bsent a compelling reason, courts must respect and enforce the terms of a contract that the parties have freely and voluntarily made."  *Bombardier Aerospace Corp. v. SPEP Aircraft Holdings, LLC*, 572 S.W.3d 213, 230 (Tex. 2019).  Here, Cobra and Alpha Lobo contracted for a specific termination date for their business relationship.  *Big Spring v. Board of Control*, 404 S.W.2d 810, 815 (Tex. 1966) ("Words which fix an ascertainable fact or event, by which the terms of a contract's duration can be determined, make the contract definite and certain in that particular.").  Alpha Lobo argues that Cobra failed to meet its burden of proof because the amended MSA only "estimated" the end date and because Cobra did not prove whether the MSA expired on August 15, 2018, or July 21, 2018,[19] when the Emergency PREPA Agreement ended.  The Panel disagrees.  The amended MSA is clear.  The "term" of the amended MSA was "estimated to be valid **until** August 15, 2018" unless the COBRA/PREPA project was not completed. (emphasis added).  The ordinary meaning of the word "until" means "up to the time of" August 15, 2018.  Here, the credible testimony of Arty Straehla and Mark Guess[20] and contemporaneous emails from Charles[21] confirmed that both Cobra and Alpha Lobo

---

[19] *See* JX 40 (SEC Form 10-K "Cobra performed the full $945 million of services under the initial contract as of July 21, 2018.")

[20] Employed by Cobra as an operation executive and stationed in Puerto Rico during relevant times of this arbitration.

[21] See JX 16 (July 25, 2018, email from Charles to Jaklyn/Jason, "We are inquiring about the August 15 end of contract date.");  JX 20 (August 13, 2018, Charles email stating, The MSA with Alpha Lobo ends on August 15, just two days from now."); (August 14, 2018, Charles email stating, "I just need a statement from Cobra that you no longer are requiring services from Alpha Lobo beyond the 15th day of August, 2018); JX 23 (September 25, 2018, Charles email stating, "The contract with Alpha Lobo and Cobra Energy has ended as of August 15, 2018.").

understood that the MSA terminated by its express terms no later than August 15, 2018. The Panel finds that the MSA between Cobra and Alpha Lobo terminated on August 15, 2018.

Similarly, the MSA and its first amendment do not preclude Cobra from freely contracting with another entity except for Article 15 of the MSA which reads in pertinent part that for a period of two years: "COBRA will not solicit or attempt to solicit any person or entity who is a director, officer, independent contractor, contractor, employee or agent of ALPHA . . . without the prior written consent of ALPHA." Alpha Lobo never argued in this arbitration that Cobra breached Article 15 of the MSA when it contracted with Espada Caribbean. Additionally, the credible testimony of Mark Guess, Cobra's corporate representative, and contemporaneous emails establish that Espada Caribbean solicited Cobra.[22] For the above reasons, the Panel finds that under the MSA and its first amendment, Cobra had no contractual obligation to enter a new contract with Alpha Lobo but was free to contract with any entity it chose including Espada Caribbean. *See Energy Transfer Partners,* 593 S.W.3d at 740.

The controlling legal issue on Cobra's second declaratory request is whether a valid oral agreement exists between Cobra and Alpha Lobo. Craig Charles and Jayce Calderas, two of Alpha Lobo's three principles, testified that prior to the MSA being signed Keith Ellison, a Cobra executive, promised Alpha Lobo a "partnership" and "oral contract" to provide private security services to Cobra till Cobra left the island. Cobra denies such an

---

[22] JX 14 (July 10, 2018, Jorden email on behalf of Espada Caribbean LLC stating, "We are approaching the 30-day mark until the end of our current contract. I hope that you understand that I am straight up and honest and am here to deliver you a quality product at reasonable cost."); JX 17 (July 23, 2018, Jorden email stating, "I have requested three meetings to discuss contractual issues in the past month with no response, so I finally sent the e-mail on the 23rd to state our intentions.")

731714.000182 4851-9380-2222.2

12

oral agreement but argues that even if such an oral agreement existed, any such purported oral agreement would fail as a matter of law based on the MSA's express terms. Specifically, Cobra highlights the language found in Articles 20 of the MSA which states in pertinent part:

> . . .This Agreement represents the entire and integrated Agreement between the parties and supersedes all prior negotiations, representations or agreements either written or oral.   This Agreement may only be amended by written instrument signed by both parties. . . [23]

The contract language cited above is clear.  Cobra and Alpha Lobo's inclusion of a merger clause in the MSA binds both parties and makes the MSA's terms the final, binding and superseding obligations each has agreed to undertake with respect to providing the security services, aviation, and logistics that would be required while Cobra performed under the First PREPA Agreement.  *See Italian Cowboy Partners, Ltd. v. Prudential Ins. Co.,* 341 S.W.3d 323, 334 (Tex. 2011) (noting that the inclusion of a merger clause in a written contract "achieves the purpose of ensuring that the contract at issue invalidates or supersedes any previous agreements").  Even if there were prior discussions among the parties' principles about Alpha Lobo providing security services for Cobra for as long as Cobra worked on the island, those "prior negotiations, representations, or agreements" were superseded by the MSA.  The Panel finds that under the terms of the MSA, no valid oral agreement exists between Cobra and Alpha Lobo.

**Attorney Fees**

The panel turns next to the question of whether Cobra may be awarded attorney fees incurred bringing its declaratory judgment actions. Tex. Civ. Prac. & Rem. Code

---

[23] See JX 1 at Article 20; see also Article 24 stating the same thing.

§37.004.  This statute provides that the trial court "may award costs and reasonable and necessary attorney's fees as are equitable and just." *Id.* §37.009.  The granting or denial of attorney's fees in a declaratory judgment action is within the trial court's discretion. *Barshop v. Medina County Underground Water Conservation Dist.*, 925 S.W.2d 618, 637, (Tex. 1996) (award of attorney fees in declaratory judgment actions not dependent on finding party substantially prevailed).    The movant bears the burden of proof, and that proof should include "the basic facts underlying the lodestar, which are: (1) the nature of the work, (2) who performed the services and their rate, (3) approximately when the services were performed, and (4) the number of hours worked." *El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 760 (Tex. 2012).  "[T]he fact finder's starting point for calculating an attorney's fee award is determining the reasonable hours worked multiplied by a reasonable hourly rate, and the fee claimant bears the burden of providing sufficient evidence on both counts." *Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 499 (Tex. 2019).  The established basis for proving the prevailing hourly rate is to present evidence demonstrating the prevailing market rate in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation. *Id.*  "Only fees reasonable and necessary for the legal representation will be shifted to the non-prevailing party, and not necessarily the amount contracted for between the prevailing party and its attorney, as a client's agreement to a certain fee arrangement or obligation to pay a particular amount does not necessarily establish that fee as reasonable and necessary." *Id.* at 498.  Where billing entries are "not illuminating as to the subject matter" or are "vague as to precisely what was done," the court is prevented from deciding whether the time was reasonably expended. *Leroy v. Houston*, 906 F.2d 1068, 1079 (5th Cir. 1990).  Counsel for the

prevailing party should make a good faith effort to exclude from lodestar initial fee calculation hours that are excessive, redundant, or otherwise unnecessary. *El Apple I, Ltd.,* 370 S.W.3d at 762. A movant cannot generally recover fees for attorney time spent on claims on which the party did not prevail at trial. *Kinsel v. Lindsey*, 526 S.W.3d 411, 427 (Tex. 2017)

Here, both parties sought attorney fees on behalf of their respective clients. The Panel reviewed the Declaration and Supplemental Declarations of M. Scott Barnard and all attached exhibits including billing records offered in support of Cobra's attorney fee request from April 2019 through May 2021.[24] Cobra seeks to recover a total of $675,575.00 in attorney fees for that time period. Barnard testified this amount does not include "any of the fees sought as damages for breach of the MSA," and reflects only "the services of three Akin Gump litigation attorneys who worked on the arbitration" and is the amount remaining after discounts and write offs for "excessive or unnecessary and/or other discounts." Barnard provides an exhibit with redacted or partially redacted billing records to illustrate time entries not being sought in this arbitration in whole or in part. The heavy redaction, however, makes it almost impossible to review reasonableness.

The hourly rate Cobra seeks ranges from $475 per hour to $1,090 per hour. Three attorneys billed a total of 757.5 hours, which calculates to a blended hourly rate of $891.85 per hour. Barnard testified the firm's hourly rates and the fees charged are "reasonable for the type of work done, the expertise and experience of the attorneys and firm personnel performing the work, and the jurisdiction in which they practice or work," and are consistent with rates "customarily charged for firms of Akin Gump's size and reputation

---

[24] The Panel further reviewed for comparison the two Declarations of Barry A. Chasnoff, attorney for Alpha Lobo.

in Texas . . ." The Panel disagrees that Cobra has met its burden of proving that a blended average hourly rate of $891.85 is the prevailing market rate in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation. *Rohrmoos*, 578 S.W.3d at 498. The standard is not what large firms charge but what is usual and customary in the community.[25] The Panel has determined that a forty percent (40%) reduction in the hourly fee rate is warranted and reasonable. Accordingly, the Panel concludes that Alpha Lobo shall pay to Cobra, for the use and benefit of their attorneys and in reimbursement of attorney's fees necessarily incurred herein, the sum of $405,345.00.

The Panel will next address Cobra's request for costs and conditional appellate fees. The majority of Cobra's costs are the administrative fees of the American Arbitration Association and the compensation of the Panel which the Panel agrees shall be assessed against Alpha Lobo. Cobra also seeks reimbursement for the original costs of three video depositions. The Panel finds that each deposition cost $913.50, and that Cobra also paid for a next day expedited copy at an additional charge of $3,219.65 per deposition. The Panel finds that Cobra failed to establish that a total cost of $4,133.15 per deposition was reasonable, necessary and customarily. Accordingly, the Panel DENIES Cobra's request for deposition costs. The Panel finds in favor of Cobra on its request for conditional appellate attorney fees in the event Alpha Lobo unsuccessfully challenges this Award. Accordingly, the Panel awards Cobra $50,000.00 in conditional appellate attorney fees in the event Alpha Lobo pursues an unsuccessful appeal of the Panel's decision to an intermediate court of appeals. The Panel further awards Cobra $25,000.00 in the event

---

[25] For comparisons purposes only, the Panel notes that the blended hourly rate for Alpha Lobo counsel in this arbitration calculated out as $402.00 per hour.

Alpha Lobo pursues an unsuccessful appeal from a decision of the intermediate court of appeals to a higher court.

## CONCLUSION

Consistent with the findings and declarations set out in this Award, the Panel finds and concludes that Cobra is entitled to the following:

a.  Declaration One:  The Panel finds that the Master Service Agreement and its First Amendment between Cobra and Alpha Lobo terminated by its express terms on August 15, 2018.  Under the MSA and its amendment, Cobra had no contractual obligation to enter a new contract with Alpha Lobo but was free to contract with any entity of its choosing including Espada Caribbean LLC.

b.  Declaration Two:  The Panel finds that under the terms of the MSA, no valid oral agreement exists between Cobra and Alpha Lobo.

c.  The Panel awards Cobra its reasonable and necessary attorney fees in the amount of $405,345.00.  Accordingly, the Panel ORDERS Alpha Lobo to pay to Cobra, for the use and benefit of their attorneys and in reimbursement of attorney's fees and costs necessarily incurred herein, the sum of  $405,345.00.

d.  The Panel further awards Cobra $50,000.00 in conditional appellate attorney fees in the event Alpha Lobo pursues an unsuccessful appeal of the Panel's decision to an intermediate court of appeals.  The Panel further awards Cobra $25,000.00 in the event Alpha Lobo pursues an unsuccessful appeal from a decision of the intermediate court of appeals to a higher court.

Consistent with the findings and declarations set out in this Award, the Panel further finds and concludes that Cobra take nothing on its breach of contract claims.

17

The administrative fees of the American Arbitration Association totaling $8,725.00, and the compensation of the Panel totaling $81,105.00, shall be fully borne Alpha Lobo.  Therefore, in addition to the other sums awarded above, Alpha Lobo shall reimburse Cobra the sum of $49,040.00, representing that portion of said fees and compensation in excess of the apportioned costs previously incurred by Cobra.

The Panel specifically notes that this Final Award addresses only contract issues related to the parties' MSA.  This Award is in full settlement of all claims and counterclaims submitted to this Arbitration   All claims not expressly granted herein are hereby DENIED.

IT IS SO ORDERED, this 24th day of June, 2021.

_____
Phylis J. Speedlin
Panel Chair


_____
Honorable John Specia


_____
Jeff Abrams

731714.000182 4851-9380-2222.2